NEW YORK PRACTICE REPORTS. 385

Law agt. The Mayor, &c., of New York.

## SUPREME COURT.

GEORGE LAW agt. THE MAYOR, &c., of the City of New York.

Where the common council of the city of New York authorizes the comptroller of the city to *settle a claim in suit* arising on contract, and the comptroller through the corporation counsel, settles the suit accordingly, and the referee to whom the action was referred, makes his report in accordance with such settlement, upon which judgment is entered in favor of the plaintiff against the corporation; there being no irregularity, fraud, collusion or mistake of any facts shown, the corporation cannot set aside the judgment and open the cause for trial at the circuit, merely because a new corporation counsel believes a better result could be obtained by continuing the litigation to the end, in the courts.

*New York General Term.*

*Argued June* 19, 1866. *Decided December* 15, 1866.

*Before* BARNARD, *P. J.,* CLERKE *and* SUTHERLAND, *Justices.*

A CONTRACT was made on the 25th of November, 1852, between the corporation of New York, by John T. Dodge, street commissioner, and Henry Conklin, for the work of the Battery enlargement, under a resolution of the common council passed in one year by one board, and in the other year by the other board. Appropriations were from time to time made by the common council in 1853, 1854 and 1855, for payments on the work, which were sanctioned by the tax laws of 1853, chapter 232, of 1854, chapter 263, and of 1855, chapter 141, under which payments to the amount of $46,000 were made during those years. In January, 1858, the work was stopped by the mayor, &c., by ordinance.

In 1861, April 2, George Law, claiming as assignee of two-thirds of the contract, and by virtue of a power (coupled with an interest) as to the other one-third, presented to the comptroller (as required by the act of 1860, chapter 379), his claim of $23,643.35 for work done about the job, and $20,000 damages for breach of the contract.

This not being responded to, he commenced a suit May 1, 1861, and issue was joined in February, 1862. The issues were on motion, and after opposition, by order referred to John B. Haskin, Esq., referee, to hear and determine, on

the ground that it involved the examination of a long account.
A resolution was passed by the common council, June 11,
1863, authorizing the comptroller to settle and adjust the
claim.    Various negotiations for a settlement of the claim
took place.

While the reference was pending, and after considerable
proof had been taken, the corporation counsel in the latter
part of 1865, upon the suggestion, and with the concurrence
of the comptroller, made a proposition in writing, to adjust
and settle the claim, by allowing the amount claimed for
work done and interest.    This proposition was accepted in
writing by plaintiff's counsel, and a report in accordance
with the stipulation was made by the referee, by which the
whole amount of the account for work done under the con-
tract, at contract prices with interest, was allowed.

Notice of application for judgment was given Mr. O'Gor-
man, in pursuance of the act of 1865, and the new rule of
this court, and the entry of judgment specially ordered by
Judge SUTHERLAND.

A motion was made before Judge CLERKE :   1. To set
aside the judgment.    2. To vacate and annul the stipulation
signed by the former corporation counsel.    3. To vacate the
report of the referee and the order of reference.    4. That the
case be set down for trial before a jury or another referee.

The reasons assigned for this motion by the present cor-
poration counsel are :

1st.  That the contract was not legally made or executed ;
the resolution directing it having been passed by one board
in one year, and by the other board in a subsequent year.

2d.  That various allegations in the complaint excusing per-
formance within the time prescribed by the contract were
untrue, or without foundation in fact or in law.

3d.  That various legal questions arose :  1st. As to the
legality of the contract.   2d. As to excuses for non-perform-
ance in the time prescribed.   3d. As to a set-off that ought
to be allowed.   And lastly : " That in a case so surrounded by
doubtful questions as this, it should await the authoritative

decision and guidance of the court, before paying the public money to any claimant, no matter how respectable."

The motion was heard before Judge CLERKE, who granted it as asked, and ordered the case placed on the calendar for trial before a jury.

From this order the plaintiff appealed. The appeal was argued in June last before the justices above named.

H. W. ROBINSON and
WALDO HUTCHINS, *for plaintiff and appellant.*

I. The case was not within the act of 1859, chapter 489 (*See Laws* 1859, *p.* 1127), section 5, which authorizes the comptroller, where he had reason to believe a judgment against the mayor, &c., of the city of New York, was "obtained by collusion or founded in fraud," to take all necessary and proper means to open and reverse the same.

No such imputation is cast on this transaction, nor has the comptroller attempted to question the correctness of acts done under his direction.

II. The case disclosed by the affidavits and papers, showed nothing to warrant any such interference by the court.

1. Although section 174 of the Code allows the court to relieve a party from a judgment "taken against him through his mistake, inadvertence, surprise or excusable neglect," no case of such character is made by the affidavits on the part of the defendants, the mayor, &c., of New York.

(*a*) What Mr. O'Gorman's affidavit states, outside of the pleadings and documents, is mere heresay.

(*b*) There can be no pretence of fraud, mistake, inadvertence or surprise.

The plaintiff's claim for $23,643.35 (the amount of work conceded to have been done and unpaid for), and for $20,000 damages, was presented to the comptroller in April, 1861.

The suit was commenced in May, 1861. No answer was put in till February, 1862. On June 11th, 1863, the common council authorized its settlement. Negotiations were

from that time pending, until the final settlement in December, 1865.

Then the comptroller receded from the demand to set off part of the $10,000 claimed as due the corporation for filling in the Battery, and from his refusal to allow only the principal of the claim.

The proposition to settle, as finally agreed upon, came from the comptroller—was submitted to plaintiff by the corporation counsel in writing, accepted in writing, and stipulations given accordingly.

By the settlement made, the corporation abandoned the claims to a set-off, and the plaintiff conceded and abandoned on his part, the claim to $20,000 damages for breach of contract, and his claim for the material of the old Battery wall (*Fol.* 140).

There is no allegation on the part of the comptroller or corporation counsel Develin, who acted in this transaction, that they labored under any mistake, inadvertence or surprise. Nothing is shown to establish or prove any such error on their part. The only suggestion now made on the part of the present corporation counsel is, that those officers did not appreciate the force of certain legal propositions which he seeks to re-introduce into the case.

The protracted and repeated consideration of the merits of the case by the common council, and by the officers of the corporation, and their execution of the proper papers to carry their views into effect, preclude any idea of mistake of fact, inadvertence to any rights of the corporation, or any surprise in making their offer of judgment, and entering into the written stipulation with plaintiff for a settlement of the controversy. No neglect on the part of either party is alleged.

The court, by the order granted, has assumed to pass judgment upon the acts of the comptroller and (former) corporation counsel, and to decide at least (without suggestion of either of them), that the settlement they made was founded on some mistake or misconception on their part of the facts of the case.

NEW YORK PRACTICE REPORTS. 389

Law agt. The Mayor, &c., of New York.

It has also decided and held that the written stipulations entered into between the parties, and the rights which the plaintiff acquired thereunder, should be vacated and annulled.

It has also decided that the corporation are prejudiced by a compromise which the comptroller and corporation counsel determined to be for its interest; and this without being made acquainted with all the facts or proofs; and when those authorized to act in the matter were of a different opinion, and decided differently, and committed their decision to the form of a stipulation and written agreement.

The charter of the city (*Laws of* 1857, *vol.* 1, *p.* 879, § 22), gives the comptroller absolute authority to settle and adjust all claims in favor of, or against the corporation. But upon mere vague suggestion that by possibility a different conclusion might have been arrived at, at the end of litigation to be protracted for years, such a settlement is vacated and held for nothing. No case can be found to warrant any such decison.

The order is a reversal by one judge, of orders previously granted by another, viz:

1st. The order of reference of the action to a referee to hear and determine on proper cause shown, and after opposition.

2d. Order for judgment, after due notice given, and no cause assigned in opposition thereto.

The motion to open the judgment should be denied, and the order appealed from reversed, with costs.

RICHARD O'GORMAN *and*
JOHE E. BURRILL, *for defendants and respondents.*

I. The contract was not binding on the corporation, because the resolution under which it was executed passed the different boards of the common council in different years (*Wetmore* agt. *Story,* 22 *Barb.* 494).

II. The contract having been invalid in its origin, was not rendered operative or effectual by the subsequent action of the common council.

1. The proceedings referred to were not taken for any such purpose, or with any such intention.

2. Such proceedings were incapable of producing such results.   (43 *Barb.* 49 ; 20 *N. Y.R.* 312 ; 21 *Bosw.* 173 ; 20 *How. Pr. R.* 395.)

III. If the contract were valid, the plaintiff could not recover on the contract.

1. The contract never was performed.   "There must be full performance to entitle a party to recover."   (*Smith* agt. *Brady*, 17 *N. Y. R.* 173, 187; *Champlin* agt. *Rowley*, 13 *Wend.* 258.; *S. C.* 18 *Id.* 187.)

2. Even if the surveyor in charge of the work had given directions to suspend operations, such directions did not excuse the plaintiff's failure to perform, because he had no power to alter the contract in any respect, or dispense with a full performance of it.   (*Bonesteel* agt. *The Mayor*, 20 *How.* 240 ; *S. C.* 22 *N. Y. R.* 166.)

3. The fact that the rip-rap wall was not in a condition to receive the parapet wall, whether owing to the manner in which the work was done, or to the nature of the work, does not excuse the failure to comply with the contract, because these risks were assumed by the contractor.

4. The existence of the leases of the two piers, did not excuse the default of the contractor.

(*a*) The contract was entered into with full knowledge of the existence of the Vanderbilt lease ; and this, moreover, expired before the time limited by the contractor for doing the work.

(*b*) The lease of the East river pier was made for the benefit of Law, and at his request, he then being one of the managers of the ferry company.

(*c*) It is not pretended that the failure to complete the contract was owing to the existence or making of the leases.

(*d*) On the contrary, it is stated by the surveyor in his report (*volume* 69 *of the proceedings of the Board of Aldermen, pages* 114 *to* 128), that the work had not reached the place covered by the leases, and that the adjacent space was

left open at the request and for the benefit of the contractor, to make an entrance to the work.

*(e)* Even assuming that the corporation acted improperly and unjustifiably, still, unless its misconduct occasioned the default and failure of the plaintiff, it cannot avail the plaintiff.

IV. It is not correct that the corporation desired to take any undue advantage of the plaintiff, or to deal with him harshly or unjustly; for although he had no right to recover on the contract, and they could legally have refused to pay him anything (17 *N. Y. R. p.* 187), they passed a resolution authorizing the comptroller to adjust the amount "justly due and payable." *(Resolution, June,* 1863, *vol.* 31, *Joint Proceedings, p.* 176.)

V. All that is asked by the corporation counsel is, that the amount "justly due and payable," and no more, shall be awarded.

1. Applying the principles of the resolution, and adjusting the amount on the basis of a *quantum meruit,* the contract must be left out of consideration, and the work done estimated at its actual value, in the same manner as if no contract had been made.

2. But in the settlement had, the work has been estimated at the contract price, in the same way as it would have been had the plaintiff performed the contract.

3. And while the contract has been followed for the purpose of charging the defendants, its provisions have not been applied against the plaintiff. No credit has been allowed for the $7,500 due for the filling in; nor for the loss sustained by the city for the delay in the work; nor for the damage sustained by them by reason of the work having been left in an unfinished state.

4. If the work done be estimated at its fair and actual value, without reference to contract price, the money already paid to him will be found to exceed the amount of his claim.

VI. It is by no means clear on the authorities, that the common council had any right to make any adjustment of the claim, or to authorize the comptroller so to do, in a case

where the claim arises on a contract not binding on the corporation. (*See* 43 *Barb.* 49 ; 20 *N. Y.* 312 ; *Brady* agt *Mayor, S. C.* 2 *Bosw.* 117.) ·

VII. It is admitted that in the settlement made, amount allowed is in excess of what the plaintiff is entitled to, and that the settlement has been in error, and under a mistaken view of the principle and measure of compensation—and that if the settlement be carried into effect, the plaintiff will obtain a larger-sum of money, to which he is not entitled, if our views be correct, and that for these reasons relief should be granted. (5 *Abb. R.* 487 ; 26 *Barb.* 263 ; 9 *Abb.* 435 ; 11 *Id.* 69 ; 18 *How. Pr.* 576 ; *Grier* agt. *The Mayor, Op.* MONELL, *J.*)

VIII. It must be evident that the statement of the case as made on the affidavits, that the objections presented by the defendants to the claim are substantial, and involve legal questions which should be left to the court to determine, and which the interests of the city require should be settled.

IX. The report of the referee was not warranted by the stipulation, nor should the court be called upon to render a judgment based on the report of the referee, purporting to find facts, and to render a decision thereon, when there was no evidence to sustain these facts, and the referee never passed upon or decided them.

X. The action of the comptroller, to whom the plaintiff's claim was first presented, in rejecting it, and that of the counsel to the corporation, under whose advice that action was originally defended, and the repeated action of the common council in respect to this claim, furnish strong evidence that the claim lacked equity, and ought not to be allowed ; and that the settlement which we ask to have opened, was made without that full understanding and knowledge of the facts which was possessed by the former officer of the corporation, who had previously so emphatically rejected it.

XI. Mr. Law in not prejudiced by granting the motion.

On the theory of his counsel, he has voluntarily thrown away a large sum of money which he will inevitably recover if the matter be submitted to a judicial investigation.

On our theory he has received more than he is fairly entitled to, and should not retain that which is not due him, and which has been awarded improvidently or inadvertently by those who hold responsible positions of public trust.

XII. The order should be affirmed.

*By the court,* BARNARD, J. I can find no principle of law to sustain the order made at special term. It is not questioned but that the plaintiff had done work under the contract with the city for the enlargement of the Battery, which at the contract prices, with the interest added from the time when the work should have been paid for, was equal to the judgment. It is true that the contract was not performed, but the city may rescind an entire contract, or may waive a full performance and pay for the work actually done. The city also would be legally liable for the contract price of the work done, and for damages in case the non-formance of the contract was occasioned by its act.

The action is brought upon this alleged fact. The papers disclose a report of a committee of the common council of New York upon the work, going very far to sustain the plaintiff's claim; but it seems to me that the time for the argument of this question is passed. The common council authorized the comptroller to settle the claim in suit. The comptroller did settle it. The corporation counsel, by authority of the comptroller, allowed the plaintiff's claim for work actually done at contract prices. The plaintiff abandoned his claim for damages, and also his claim for the materials in the old Battery wall. The referee, upon the agreement of the parties, made his report in accordance with this agreement, and judgment was ordered by Justice SUTHERLAND, upon notice, as required by the law of 1865. There is no irregularity; there is no fraud; there is no collusion; there is no mistake of facts claimed or shown by the papers. The city has compromised a claim in suit, and the claim as thus established, has passed into a judgment, and it is proposed to set aside this judgment for the sole reason that the new

corporation counsel believes a better result could be obtained by continuing the litigation to the end in the courts.

The city cannot avoid a settlement fairly made with the plaintiff upon such ground.

The order should be reversed, with costs.

SUTHERLAND, J., concurred.

CLERKE, J., dissented.